IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00110-PAB-BNB

EUGENE H. MATHISON,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **United States' Motion to Dismiss** [Doc. #21, filed 06/12/2013] (the "Motion").  I respectfully RECOMMEND that the Motion be DENIED.

### I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II. BACKGROUND

The plaintiff currently is incarcerated by the Federal Bureau of Prisons ("BOP") at the Federal Prison Camp ("FPC") in Florence, Colorado. He filed his Prisoner Complaint on January 17, 2013 [Doc. #1] (the "Complaint"). The Complaint contains the following allegations:

1. Due to a flaw in the FPC's public address system and the placement of the exterior speakers, some announcements are not loud enough to be heard by all of the inmates but are "directed improperly to . . . inmates just a few feet away." During the early part of 2011, an FPC officer instructed the maintenance staff to increase the volume on the public address system so

that all inmates could hear the announcements. However, "[t]he problem was not the volume"; it was due to malfunctioning equipment. *Complaint*, pp. 3, 6.[1]

2. "Staff [boosted] the volume to the point where it physically hurt one's ears, even when hands were put over the ears." Id. at p. 6. The plaintiff was exposed to the speakers while waiting in line to enter the chow hall and while in the law library. Id. at p. 11.

3. The plaintiff reported the problem to Counselor Steven Cedeno early in 2011. "After repeated failures to accomplish any reduction in the unsafe volume, Plaintiff finally gave up . . . ." Id. at p. 11.

4. The plaintiff has had perfect hearing all his life. After experiencing some loss of hearing, the plaintiff filed a grievance requesting that the volume of the public address system be reduced. Case Manager Barker denied the request stating that "the volume on the public announcement system is set to the appropriate level to ensure that every inmate no matter where they are on the compound can hear." Id. at p. 3.

5. The plaintiff appealed the Case Manager's response to the Warden. The plaintiff stated that the BOP program statements specify that no inmate should be exposed to more than 85 decibels adjusted ("dBA") and that if a higher volume is present, the inmate must be fitted for hearing protection. The Warden instructed the Safety Manager to test the dBA level. After the test was performed, the volume was reduced. Id.

---

[1] I cite to the page numbers of the Complaint and the defendant's exhibits as they are assigned by the court's docketing system.

3

6. The plaintiff's hearing was tested by a Physician's Assistant and an Audiologist. The tests showed that the plaintiff has significant hearing loss in both ears. "Prior to this test, BOP records show that Plaintiff had good hearing and had never complained of loss." Id. at p. 4.

The plaintiff asserts three claims for negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671. *Complaint*, p. 3. Claim One alleges that the FPC employees who were responsible for boosting the volume were negligent. Id. at p. 6. Claim Two alleges that the Safety Manager and the BOP employees responsible for "placement and location" of the loud speakers were negligent. Id. at p. 10. Claim Three alleges that Counselor Steven Cedeno and Case Manager Barker were negligent "in resolving the unsafe noise levels."[2] The plaintiff seeks compensatory damages and the costs incurred in this action.

### III.  ANALYSIS

The defendant argues that the plaintiff's tort claims are subject to the discretionary function exception and are, therefore, barred by sovereign immunity. This is a factual challenge to the court's jurisdiction, and resolution of the jurisdictional question is intertwined with the merits of the plaintiff's claims. Tippett v. United States, 108 F.3d 1194, 1196–97 (10th Cir. 1997). Both parties have submitted evidence with their briefs, and I consider the evidence in my resolution of this matter. Therefore, the defendant's Motion is converted into a Rule 56 summary judgment motion. Holt, 46 F.3d at 1003.

---

[2] Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based"). In addition, to the extent the plaintiff attempts to assert a claim under the Eighth Amendment in his response [Doc. #25] to the Motion, I will not address claims raised for the first time in a brief opposing a dispositive motion.

It is well-settled that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981) (internal quotations and citations omitted). The FTCA provides a limited waiver of the sovereign immunity for certain torts. See 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. Specifically:

> Under the FTCA, the United States waives its sovereign immunity with respect to certain injuries caused by government employees acting within the scope of their employment. The FTCA contains an exception to this broad waiver of immunity, however, for claims based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. The discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals. If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity, and the district court lacks subject matter jurisdiction to hear the suit.
>
> In dozens of cases in the last decade, this court has determined whether government conduct was within the exception by using a two-branch analysis announced in Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). This court has summarized the analysis as follows: First, we determine whether the governmental conduct at issue is a matter of choice for the acting employee. Conduct cannot be discretionary unless it involves an element of judgment or choice. Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In such a situation, the employee has no rightful option but to adhere to the directive.
>
> If the conduct at issue involves an element of judgment or choice, Berkovitz requires us to determine whether that judgment is of the kind that the discretionary function exception was designed to shield. Congress preserved governmental immunity for discretionary functions to prevent judicial second-guessing of

>legislative and administrative decisions grounded in social,
>economic, and political policy through the medium of an action in
>tort. Therefore, the exception protects only governmental actions
>and decisions based on considerations of public policy. This court
>has also noted the Supreme Court's modification of Berkovitz 's
>second branch: Only decisions that are susceptible to policy
>analysis are protected by the exception.

Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1130 (10th Cir. 1999) (internal quotations and citations omitted).

The plaintiff asserts that BOP Program Statements 1600.09(D)[3] and 6031.03(28) create a duty to ensure that the sound levels to which he was exposed are kept to a level of 85 dBA or lower. *Complaint*, p. 7. BOP Program Statement 1600.09(D) provides:

>Noise assessments and hearing conservation programs are per the
>OSHA Occupational Noise Exposure regulation , 29 CFR 1910
>Subpart G. The Safety Manager conducts an institution-wide
>survey to determine high-noise areas and operations as defined in
>the regulation.

*Complaint*, p. 7; *Motion*, Ex. B, p. 13.

Program Statement 6031.03(28) provides:

>Whenever individual occupational noise exposure equals or
>exceeds the eight-hour time weighted average (TWA) sound level
>of 85 decibels (and above) measured on the "A" scale (dBA), the
>institution will initiate a hearing conservation program.
>\* \* \*
>The Safety Manager will arrange for an initial survey of the
>institution to identify work areas where inmates are subjected to
>noise exposure of 85 dBA TWA or higher.
>\* \* \*

---

[3] In his Complaint, the plaintiff refers to this Program Statement as 1609.09(D). *Complaint*, p. 7. The defendant refers to it as 1600.09(D), and attaches a copy of it to the Motion. *Motion*, p. 6, Ex. B. Both parties agree on the content of the Program Statement. The plaintiff does not dispute that the Program Statement at issue is 1600.09(D). Therefore, I refer to the Program Statement as 1600.09(D).

> The Safety Manager will be responsible for ensuring hearing protection fitting and training.

*Complaint*, p. 7; *Motion*, Ex. C, p. 3.

Valerie Encarnanze, Environmental and Safety Compliance Administrator at the Federal Correctional Complex in Florence, Colorado, attests that the BOP conducts noise assessments and hearing conservation programs insofar as they relate to work locations and housing units; Program Statements 1600.09(D) and 6031.03(28) apply to occupational noise levels, not noise levels of the public address system referred to in the Complaint; there is no statute, BOP policy, regulation, directive, or order that provides for acceptable noise levels on a public address system in an inmate law library or in exterior walkways; and the volume of the public address system in the areas where plaintiff claims he was exposed to unsafe noise levels was left to the discretion of staff members at the facility. *Motion*, Ex. A.

The plaintiff does not dispute that Program Statements 1600.09(D) and 6031.03(28) apply to noise levels in work locations, not the public address system. Instead, he argues that 18 U.S.C. § 4042(a)(2) imposes a non-discretionary duty of care which requires the BOP to maintain safe noise levels over the public address system. Section 4042(a)(2) provides that "[t]he Bureau of Prisons, under the direction of the Attorney General, shall--provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise."

Assuming for purposes of this analysis that the BOP's conduct in increasing the volume of the public address system is governed by section 4042(a)(2), the statute does not mandate a specific non-discretionary course of conduct for BOP officials to follow in providing for the inmates' safekeeping. Instead, it leaves the implementation of the duty of safekeeping to the

discretion of BOP officials. Flynn v. United States, 902 F.2d 1524, 1530 (10th Cir. 1990) (in order to find that a statute or regulation is non-discretionary, there must be a fixed, clearly ascertainable standard for the government employee to follow); Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) ("even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception"); Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that [Section 4042(a)(2) ] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates. For [the plaintiff's] argument to be effective, he must demonstrate that § 4042 sets forth nondiscretionary actions which the BOP personnel were required to undertake to protect [him]); Thrower v. United States, ___ Fed.Appx. ___, No. 12-4386, 2013 WL 2392823, at *2 (3rd Cir. June 3, 2013) ("[w]hile the BOP's conduct at issue is governed by a federal statute requiring the BOP to provide for the "protection" and "safekeeping" of inmates, see 18 U.S.C. § 4042(a)(2), the statute leaves implementation of these duties to BOP officials' discretion" ); Steele v. United States, Civil Action No. 09-cv-01557-CMA-CBS, 2010 WL 2501200, at *6 (D.Colo. June 15, 2010) ("although § 4042 uses the word 'shall,' prison officials are granted discretion to decide what suitable quarters are, what is necessary to provide for the subsistence of prisoners, and how best to keep inmates safe").

Even though the BOP's conduct in increasing the volume involved an element of judgment, the discretionary function exception applies only to government actions that are grounded in considerations of public policy. Franklin, 180 F.3d at 1130. The defendant does not

submit any evidence to show that the decision to increase the volume of the public address system was grounded in social, economic, or political policy. Counsel for the defendant argues that "[c]ommunications over the PA system that cannot be heard by inmates poses a risk to their safety as well as staff. This analysis is consistent with what Plaintiff references in his complaint, *i.e.*, that Bureau staff told him that the PA system was set at a level 'to ensure that every inmate no matter where they are on the compound can hear [communications].;" *Motion*, p. 7. Counsel also argues that the decision to increase the volume instead of repairing or replacing the equipment "implicates competing budgetary concerns, which are clearly policy in nature. Likewise the location at which the speakers were placed involved design and security considerations." *Motion*, pp. 7-8.

The policy considerations that affect the decision to install a public speaker system, such as ensuring that all inmates can hear communications, are not the same considerations implicated in maintaining the system. See Lopez v. United States, 376 F.3d 1055, 1059-60 (10th Cir. 2004). A decision to increase the volume to levels which "physically hurt one's ears, even when hands were put over the ears" is not susceptible to policy analysis. Moreover, the defendant's budgetary argument is belied by the fact that the volume was subsequently reduced to an acceptable level--apparently at no cost.

The act of increasing the volume of the public speaker system to levels that physically hurt the inmates' ears does not implicate any public policy considerations. Therefore, the plaintiff's claims are not barred by the discretionary function exception to the FTCA.[4]

---

[4] In determining that the discretionary function exception to the FTCA does not apply in this case, I make no determination regarding the merits of the plaintiff's negligence claims.

9

## IV. CONCLUSION

I respectfully RECOMMEND that the United States' Motion to Dismiss [Doc. #21] be DENIED.[5]

Dated October 29, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[5] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).