IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00110-PAB-BNB

EUGENE H. MATHISON,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

## ORDER

---

This matter is before the Court on the Recommendation of United States

Magistrate Judge [Docket No. 33].  The magistrate judge recommends that the Court

deny the United States' Motion to Dismiss [Docket No. 21] filed by defendant United

States of America ("United States").  On November 12, 2013, defendant filed timely

objections [Docket No. 38] to the Recommendation.  Therefore, the Court will

"determine de novo any part of the magistrate judge's disposition that has been

properly objected to."  Fed. R. Civ. P. 72(b)(3).

Underlying facts are set forth in the Recommendation and will not be restated

here.  *See* Docket No. 33 at 2-4.  Defendant objects to the magistrate judge's finding

that the "discretionary function" exception to the Federal Tort Claims Act ("FTCA"), *see*

28 U.S.C. § 1346(b), does not apply to the conduct alleged by plaintiff Eugene H.

Mathison.  Docket No. 38.

The FTCA waives the United States' sovereign immunity for "personal injury . . .

caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The waiver of immunity does not cover the "failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A government employee's decision falls within this exception if it (1) "involv[es] an element of judgment or choice" and (2) is "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). This exception is "designed to protect policymaking by the executive and legislative branches of government from judicial second-guessing." *Garcia v. United States Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008) (internal citations omitted).

In determining whether a decision implicates public policy and is therefore the "kind that the discretionary function exception was designed to shield," *see Kiehn v. United States*, 984 F.2d 1100, 1103 (10th Cir. 1993), courts "do not consider the employee's subjective intent in exercising the discretion conferred by statute or regulation, but [focus] on the nature of the actions taken and on whether they are susceptible to policy analysis." *Garcia*, 533 F.3d at 1176 (internal citations omitted). "Discretionary conduct is not confined to the policy or planning level." *Gaubert*, 499 U.S. at 325. Rather, day-to-day management of an agency or institution "regularly requires judgment as to which of a range of permissible courses is the wisest." *Id*. However, "[*n*]*ot all choices* come within the exception." *Figueroa v. United States*, 64

2

F. Supp. 2d 1125, 1131-32 (D. Utah 1999) (emphasis in original). At times, the "facts of the specific case may overcome the presumption to which the government is entitled under *Gaubert*" where it is "obvious that a decision implicates none of the public policies that ordinarily inform an agency's decisionmaking." *Elder v. United States*, 312 F.3d 1172, 1182 (10th Cir. 2002).

For example, in *Duke v. Dept. of Agriculture*, 131 F.3d 1407, 1410-11 (10th Cir. 1997), the court found that "permit[ting] the government to argue . . . that decisions–or nondecisions–that involve choice and any hint of policy concerns are discretionary" would "allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." (quoting *Cope v. Scott*, 45 F.3d 445, 448-49 (D.C. Cir. 1995)) ("One of the problems . . . is that nearly every governmental action is, to some extent, subject to policy analysis–to some argument that it was influenced by economics or the like."). In *Duke*, plaintiff challenged the Department of Agriculture's failure to post signs warning of falling rocks at a campsite, despite the government's knowledge that the rocks posed a threat to campers. *Id*. at 1410, 1412. The court found that a "warning sign or a sign prohibiting camping at the site because of the danger would cost little" and that the record contained "no evidence . . . of any social or political justification." *Id*. at 1412. Accordingly, the court held that the discretionary function exception did not apply. *See also Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs*, 881 F.2d 895, 898 (10th Cir. 1989) (the government's "alleged failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned").

3

The Bureau of Prisons' October 2007 Program Statement on occupational safety provides that:

> Noise assessments and hearing conservation programs are per the OSHA Occupational Noise Exposure regulation, 29 C.F.R. 1910 Subpart G. The Safety Manager conducts an institution-wide survey to determine high-noise areas and operations, as defined in the regulation. HSD's Patient Care Program Statement outlines baseline and annual audiometric testing, per 29 C.F.R. 1910 Subpart G.
>
> Workers conducting operations that exhibit greater than 90 decibels (A scale), for an 8-hour time-weighted average use hearing protection. . . .
>
> A noise level survey is conducted per ACA standards to ensure that housing areas do not have excessive noise sources (e.g., noisy pipes, fans, ice machines, or mechanical rooms) close to inmate sleeping areas.

Docket No. 22 at 13, *available at* http://www.bop.gov/DataSource/execute/dsPolicyLoc.

A separate Program Statement provides that:

> Whenever individual occupational noise exposure equals or exceeds the eight-hour time weighted average (TWA) sound level of 85 decibels (and above) measured on the "A" scale (dBA), the institution will initiate a hearing conservation program. At a minimum, the program will meet the requirements of paragraphs (c) through (o) of 29 C.F.R. Part 1910.95.[1]

Docket No. 22-1 at 2.

The parties do not dispute that these Program Statements apply only to occupational noise levels and thus that prison officials had discretion to set the volume level of the speakers placed "[a]long the walkways leading to both sides of the Food Service chow hall, in front of the law library, Multipurpose room and gym on one side and in front of the Commissary, laundry, barber shop, phone room and medical." Docket No. 1 at 10; *see* Docket No. 39 at 2. The resolution of the United States' motion

---

[1]The Federal Regulations cited in these Program Statements govern occupational noise exposure.

4

to dismiss thus turns on the second prong of the *Berkovitz* test: whether the challenged decisions are of the kind susceptible to policy analysis.

The magistrate judge found that

A decision to increase the volume [of the public address system speakers] to levels which "physically hurt one's ears, even when hands were put over the ears" is not susceptible to policy analysis.  Moreover, the defendant's budgetary argument is belied by the fact that the volume was subsequently reduced to an acceptable level–apparently at no cost.

Docket No. 33 at 9.  Defendant objects to this finding, arguing that "[w]hen Plaintiff's claims are examined discretely, they are each susceptible to policy analysis and thereby encompassed within the discretionary function exception."  Docket No. 38 at 7. First, defendant argues that deciding to increase the volume on the speakers implicates prison safety, insofar as prison staff must ensure that all inmates can hear the announcements, and budgetary concerns, insofar as increasing the volume was an alternative to repairing or replacing the existing system.  Docket No. 38 at 4.  Second, defendant argues that the placement of speakers implicates the same policy concerns. *Id*. at 4-5.  Third, defendant argues that the delayed response to plaintiff's complaints implicates personnel and budgetary decisions in terms of allocating staff time to competing responsibilities and determining how best to resolve the problem.  *Id*. at 5. Defendant argues that the fact that the "ultimate solution merely involved turning down the volume of the system does not mean it was divorced from policy considerations, particularly given the volume was increased initially due to a safety concern that all inmates and staff were not able to hear safety-critical announcements."  *Id*.

Plaintiff alleges that the volume on the speakers was increased in the "early part

5

of 2011," Docket No. 1 at 6, and remained elevated above safe levels until mid-June

2011.  *Id*. at 11.  He alleges that he reported the problem verbally "early in 2011," and,

"[a]fter repeated failures to accomplish any reduction in the unsafe volume," filed written

complaints on May 24, 2011 and June 2, 2011.  *Id*.  He further alleges that, in June

2011, Warden Blake R. Davis

> finally looked into the matter and sent the Safety Manager to check the dBs
> and determined that Plaintiff was correct in his claims of unsafe sound
> exposure.  On June 10, 2011, Counselor Cedeno asked Plaintiff if the
> reduction to safe limits was sufficient to informally resolve the negligence
> complaint.  He said that it was and signed off on the BP-9.

*Id*.  The United States appears to concede that the "ultimate solution merely involved

turning down the volume of the system."  Docket No. 38 at 5.  Thus, the facts of this

case–namely, that prison officials increased the volume to unsafe levels for at least

several months, despite plaintiff's repeated complaints, until the safety manager

investigated and ordered prison officials to lower the volume, which they did–"overcome

the presumption to which the government is entitled under *Gaubert*."  *See Elder*, 312

F.3d at 1182.  The United States does not dispute that this solution came at no

additional cost to the prison.  Nor does the United States explain why safety concerns

necessitated increasing the volume of the speakers in early 2011, but permitted

lowering the volume in June 2011 without making any other changes to the public

address system.

    The government's arguments demonstrate that "nearly every governmental

action is, to some extent, subject to policy analysis–to some argument that it was

influenced by economics or the like."  *See Duke*, 131 F.3d at 1410.  Shielding the

actions alleged here from liability would "allow the exception to swallow the FTCA's

sweeping waiver of sovereign immunity." *Id*. at 1411.

The Court agrees with the magistrate judge's finding that the "act of increasing the volume of the public speaker system to levels that physically hurt the inmates' ears does not implicate any public policy considerations." Docket No. 33 at 9. This finding corresponds specifically to plaintiff's first claim, *see* Docket No. 1 at 6, and thus, contrary to the United States' argument, a different result is not compelled by considering plaintiff's claims separately. *See* Docket No. 38 at 4. In this case, the decision to set the volume of the public address system to an unsafe level, in addition to the decision to maintain the volume at that level for several months, despite inmate complaints, when the "solution" to the problem "merely involved turning down the volume of the system," *see* Docket No. 38 at 5, is not the "kind [of decision] that the discretionary function exception was designed to shield," *see Kiehn*, 984 F.2d at 1103; *see also Gotha v. United States*, 115 F.3d 176, 181-82 (3d Cir. 1997) (U.S. Navy's failure to "provide routine safeguards on a footpath leading to a structure under its control" is "not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.") (internal citation omitted). Wherefore, it is

**ORDERED** that the Objection to Order by Magistrate Judge (Doc 45) [Docket No. 47] is OVERRULED and the Recommendation of United States Magistrate Judge [Docket No. 33] is ACCEPTED. It is further

**ORDERED** that the United States' Motion to Dismiss [Docket No. 21] filed by

defendant the United States of America is DENIED.

DATED February 24, 2014.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge