IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-00110-PAB-BNB

EUGENE H. MATHISON,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the following cross-motions for summary judgment:

(1)  The plaintiff's **Motion for Summary Judgment** [Doc. #60, filed 06/26/2014] (the "Plaintiff's Motion"); and

(2)  The defendant's **Motion for Summary Judgment** [Doc. #64, filed 07/11/2014] (the "Defendant's Motion").

I respectfully RECOMMEND that the Plaintiff's Motion [Doc. # 60] be DENIED and the Defendant's Motion [Doc. # 64] be GRANTED.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  UNDISPUTED MATERIAL FACTS

1.  The plaintiff was incarcerated at the Federal Prison Camp ("FPC") in Florence, Colorado, at all times relevant to his claims.[1]  *Prisoner Complaint* [Doc. #1] (the "Complaint"), p. 3; *Defendant's Motion*, p. 2, ¶ 1; *Memorandum in Opposition to Defendant's Motion for Summary Judgment* [Doc. #69] ("Plaintiff's Response"), pp. 2, 3.[2]

2.  The prison compound has a public address ("PA") system with speakers that are located inside the buildings and outdoors throughout the prison compound and near where inmates may be located.  *Defendant's Motion*, p. 2, ¶ 2; *Plaintiff's Response*, pp. 2-3; *Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* [Doc. #71] ("Defendant's Reply"), p. 1.

3.  Many of the outside speakers are RadioShack's Super Powerhorn model No. 40-1307.  The Powerhorn speakers are designed for output of up to 107 decibels at 40 watts. *Defendant's Motion*, p. 2, ¶ 3;[3] *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

4.  The plaintiff alleges that the volume level of the PA system was turned up sometime in February or March 2011.  *Defendant's Motion*, p. 2, ¶ 5; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

---

[1]The plaintiff has been released from the custody of the Bureau of Prisons ("BOP"). *Defendant's Motion*, p. 2, ¶ 1; *Plaintiff's Response*, p. 2.

[2]The Complaint and Plaintiff's Response are not consecutively paginated.  Therefore, I cite to the page numbers of the Complaint and Plaintiff's Response as they are assigned by the court's docketing system.

[3]The defendant cites to Exhibit 1 of its motion to support this statement.  Exhibit 1 appears to be a user's guide to the RadioShack Super Powerhorn.  Exhibit 1 is not authenticated and, therefore, is not competent evidence.

5.   The plaintiff presents affidavits from other inmates at FPC stating that the volume of the system was increased to a "painful" level. *Defendant's Motion*, p. 2, ¶ 6; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

6.   The plaintiff estimates that his exposure to the outdoor speakers was approximately two hours a day, four to five days a week while he was in the law library, and an additional thirty to sixty minutes each day of the week at other locations, from approximately February 2011 until June 10, 2011. *Defendant's Motion*, p. 2, ¶ 7; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

7.   The plaintiff estimates that he was exposed to approximately 50 announcements over the speakers during a two to three hour time span. *Defendant's Motion*, p. 2, ¶ 8; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

9.   The plaintiff has not designated any experts in this matter. *Defendant's Motion*, p. 2, ¶ 10; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

10.   On May 24, 2011, the plaintiff submitted an Informal Resolution Form ("BP-8"), complaining about the volume level of the PA system. *Defendant's Motion*, p. 2, ¶ 11; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.  On June 1, 2011, Correctional Counselor S. Cedeno provided a response to the BP-8, stating that "the volume on the P.A. system was set to the appropriate level to ensure that every inmate no matter where they are on the compound can hear a page from a staff member." *Defendant's Motion*, p. 2, ¶ 12; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.  On June 10, 2011, BOP staff received a Request for Administrative Remedy ("BP-9") from the plaintiff, requesting a reduction in the sound level of the PA system. *Defendant's Motion*, p. 2, ¶ 13; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

11.   The plaintiff alleges that he had "perfect hearing" all his life and presents affidavits from inmates and family members claiming he had good hearing prior to the increase in speaker volume.  *Defendant's Motion*, p. 2, ¶ 15; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

12.   The plaintiff first requested a hearing exam due to hearing loss on May 6, 2011, during a medical follow-up evaluation.  *Defendant's Motion*, p. 2, ¶ 16; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

13.   P.A. Comancho, a physician's assistant, performed an audiometric examination of the plaintiff on July 22, 2011.  *Defendant's Motion*, p. 2, ¶ 17; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

14.   The plaintiff's hearing had never been checked by a BOP audiologist prior to the audiometric examination on July 22, 2011.  The plaintiff recalls one prior instance in which his hearing was tested by an audiologist in approximately 1990.  *Defendant's Motion*, p. 2, ¶ 18; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

15. William DeHoan of Hearing Life performed an audiometric examination of the plaintiff on November 22, 2011.  *Defendant's Motion*, p. 2, ¶ 19; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

16.   The November 22, 2011, audiogram shows that the plaintiff has a moderate to severe sensorineural hearing loss, bilaterally.  *Defendant's Motion*, p. 2, ¶ 20; *Plaintiff's Response*, pp. 2-3; *Reply*, p. 1.

## III.   ANALYSIS

The Complaint asserts three claims for negligence under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671.  *Complaint*, p. 3.  Claim One alleges that the FPC employees who

were responsible for increasing the volume were negligent.  Id. at p. 6.  Claim Two alleges that

the Safety Manager and the BOP employees responsible for "placement and location" of the loud

speakers were negligent.  Id. at p. 10.  Claim Three alleges that Counselor Steven Cedeno and

Case Manager Barker were negligent "in resolving the unsafe noise levels."  Id. at p. 11.


The plaintiff states that he "has not elected to defend his allegation regarding the

placement of the loudspeakers as there is no way to determine when and who was negligent in

this decision."  *Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment*

[Doc. #70] ("Plaintiff's Reply"), p. 1.  In addition, he states that the act of increasing the volume

is not at issue in this case.  Rather, the only issue is whether the defendant was negligent when it

failed to correct the excessive volume after receiving complaints about it.  *Plaintiff's Response*,

pp. 17, 18, 19, 20, 21, 23, 28.  I deem Claims One and Two abandoned.  See Poole v.

Southwestern Bell Telephone L.P., 86 Fed.Appx. 372, 374 (10th Cir. 2003) (deeming claims

abandoned in the district court because the plaintiff did not oppose defendant's argument to

dismiss them in response to motion to dismiss).

The plaintiff brings his action pursuant to the Federal Tort Claims Act, 28 U.S.C. §

1346(b).  The FTCA allows monetary damages for "personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The FTCA applies the law of

the state where the alleged negligence occurred and makes the United States liable to the same

extent as a private person would be under like circumstances.  Id.  The parties agree that

Colorado negligence law applies in this case. *Defendant's Motion*, p. 6; *Plaintiff's Response*, p. 4.

The elements of a claim of negligence under the substantive law of Colorado consist of (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff, and (4) a proximate cause relationship between the breach and the injury. <u>Casebolt v. Cowan</u>, 829 P.2d 352, 356 (Colo. 1992). While the existence and scope of a duty is a question of law, the issues of breach of duty and causation are generally questions for the jury. <u>Observatory Corp. v. Daly</u>, 780 P.2d 462, 466 (Colo. 1989). However, when the "facts are undisputed and reasonable minds could draw but one inference from them," breach of duty and causation become questions of law for the court. <u>Gibbons v. Ludlow</u>, 304 P.3d 239, 244 (Colo. 2013) (internal quotations and citations omitted).

## A.   The Duty Owed

The parties agree that the BOP has a statutory duty under 18 U.S.C. § 4042(a)(2) to "provide suitable quarters and provide for the safekeeping, care, and subsistence of " federal inmates. *Defendant's Motion*, p. 7; *Plaintiff's Response*, p. 4. "The statute requires the exercise of ordinary diligence to keep prisoners safe and free from harm." <u>Buchanan v. United States</u>, 915 F.2d 969, 971 (5th Cir. 1990).

## B.   Breach of the Duty

The defendant argues that the plaintiff has failed to produce sufficient evidence to support his claim that the defendant breached its duty of care in not timely reducing the volume of the speakers. *Defendant's Motion*, pp. 11-10. Citing to its Exhibit 2, the defendant states that the BOP conducted "a regular safety inspection during the time the volume was allegedly at an

excessive level and found sound volume to be below the required daytime limit of 70 decibels."
Id. at p. 11. Exhibit 2 is a Memorandum dated April 8, 2011, from Michael K. Nalley, the BOP
Regional Director, which states that on March 15 and 16, 2011, "Jeff Verhulst and Carol Iden,
Regional Mechanical Engineers, conducted a technical assistance visit to FPC Florence . . . to
evaluate the adequacy of ventilation, lighting, and sound levels with respect to the American
Correctional Association ("ACA") standards. . . . The evaluation found no sound measurement
test sites had sound levels above 70 decibels." The memorandum is not authenticated and is,
therefore, not competent evidence. Moreover, the memorandum states that sound level
measurements were taken "in all housing units and segregation units throughout" the entire
federal prison complex in Florence. The plaintiff's allegations are focused on outdoor speakers
placed near the law library, chow hall, bathrooms, telephones, laundry, and commissary, not
speakers placed in the housing units. *Complaint*, p. 3; *Defendant's Motion*, Ex. 10, 56:11-57:12.

The defendant also argues that "there is no evidence suggesting that the BOP failed to
respond properly or appropriately to Plaintiff's informal or formal complaints." *Defendant's
Motion*, p. 12. The defendant states that its Exhibits 5 and 6 show that the plaintiff complained
about the volume on May 24, 2011, through a BP-9, and the complaint was informally resolved
on June 10, 2011. The defendants' Exhibits 4, 5, and 6 show that the plaintiff filed an Informal
Resolution Form ("BP-8") on May 24, 2011, in which he complained that the PA system was
"damaging to [his] hearing" because the volume was so loud, especially along the building by
Education, the Gym, and the Commissary. Id. at Ex. 4. On June 1, 2011, Correctional
Counselor S. Cedeno stated that the volume was set to "the appropriate level to ensure that every
inmate no matter where they are on the compound can hear a page from a staff member." Id. at

8

Ex. 5.  On June 2, 2011, the plaintiff filed a Request for Administrative Remedy ("BP-9")

complaining that he was suffering hearing loss from the volume level of the PA system.  Id. at

Ex. 6.  The BP-9 was received on June 10, 2011.  Id.  Under the "Response" section of the BP-9,

is written "Informally resolved - thanks."  Id.  The response is not dated.

The plaintiff provides a sworn declaration stating that he complained about the excessive

volume to Mr. Cedeno and Ms. Barker (the prison official who ordered the volume increase) for

two months prior to filing the BP-8 on May 24, 2011.  He further states that he had to file the

BP-8 on May 24, 2011, because neither Cedeno nor Barker would correct the problem.

*Plaintiff's Response*, Ex. P-2, second consecutive page.  The plaintiff's BP-8 refers to a "cop-

out" sent to Ms. Barker prior to filing the BP-8.  *Defendant's Motion*, Ex. 4.  The plaintiff also

states in his Complaint that he reported the volume issue to Cedeno "early in 2011," and that

"[a]fter repeated failures to accomplish any reduction in the unsafe volume, Plaintiff finally gave

up and put his complaint in writing in a BP-8 dated May 24, 2011."[4]  *Complaint*, p. 11.  A

material fact dispute exists regarding whether the BOP timely responded to the plaintiff's

complaints about the noise level of the PA system.

---

[4]Under C.D. Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1992), a plaintiff's complaint may be treated as an affidavit under Fed.R.Civ.P. 56(e) to the extent it contains statements that are based on personal knowledge and those statements have been sworn under penalty of perjury.  The plaintiff's statement is based on his personal knowledge, and he has declared under penalty of perjury that the statements contained in the Complaint are true and correct pursuant to 28 U.S.C.. § 1746.  *Complaint*, p. 13.  Under section 1746, whenever any rule requires that a matter be supported by affidavit, such matter may be supported by an unsworn declaration which is subscribed by the author as true under penalty of perjury and dated.

Finally, the defendant argues that "in the absence of evidence showing that the volume level was obviously dangerous, Plaintiff cannot show that the BOP was negligent in not immediately reducing the volume." *Defendant's Motion*, p. 12.

The plaintiff attests that after the volume was increased, it was "so high that even covering our ears we could not escape the pain caused by the extremely sharp blasts coming from these old speakers." *Plaintiff's Response*, Ex. P-2, second consecutive page, first paragraph. He also provides similar sworn statements from several inmates. Id. at Ex. P-4 ("the volume of the PA system was increased to beyond painful level"); Ex. P-5 ("a few months ago they increased the loudness (dbs) of the public address system too much that it wass [sic] and is painfull [sic] to be anywhere near the outside speakers" and "many of us complained that the speakers were hurting our ears"); Ex. P-6 ("staff here raised the decibels on the sound system to where it was litterally [sic] painful, even if we covered our ears"); Ex. P-7 ("[the BOP] increased the noise levels so high that if we were in the area of the outside speakers it would nearly knock us off our feet" and "[i]t was very loud, after many of us complained they finally lowered it"). A material fact dispute exists regarding whether the volume of the speakers was obviously dangerous.

### C. Causation

The plaintiff's evidence regarding causation may be summarized as follows:

The plaintiff states under penalty of perjury that he had perfect hearing all of his life and that his hearing loss was caused by the BOP's failure to check whether the speaker volume was safe over a period of months. *Plaintiff's Response*, Ex. P-2; *Complaint*, pp. 3, 11. He testified that the speakers that affected him were on either side of the chow hall where he would have to

stand in line for extended periods of time seven days a week, three times a day; by the commissary where he may wait for half an hour once a week; by the telephone where he would wait from five to 45 minutes three or four times a week; by the door to the law library where he spent 30 to 60 minutes a day; by the bathroom; and by the gym. *Defendant's Motion*, Ex. 10, 11:14-12:4; 57:5-12. He further testified that the speakers were pointed down toward where people stand and walk *Motion*, Ex. 10, 53:6-8. He testified that he spent more time in the law library than any other inmate. Id. at 61:19-23. He estimated that on many days he was exposed to the excessive volume for approximately two hours. Id. at 12:2-7. He testified that in the course of two hours, there would be anywhere from 30 to 50 announcements over the PA system. Id. at 12:21-23.

The plaintiff submits affidavits from other inmates and family members which state that after the volume of the PA system was increased the plaintiff began exhibiting hearing loss. One inmate states under penalty of perjury that he arrived at FPC the same date as the plaintiff; he spent alot of time with the plaintiff over three years; he never noticed anything wrong with the plaintiff's hearing until shortly after the volume of the PA system "was increased to beyond painful level"; the plaintiff's hearing got progressively worse after the increase in volume; and there is no doubt that the extreme volume of the PA system damaged the plaintiff's hearing. *Plaintiff's Response*, Ex. P-4.

Inmate Roman Mesina states under penalty of perjury that he and the plaintiff were inmates at FPC together for several years; the plaintiff's hearing was excellent until the volume of the loudspeakers was increased to the point that it was painful to be anywhere near the speakers; not long after the volume was increased, the plaintiff began to complain that he had

trouble hearing; and there is no question that the loudness of the speakers caused the plaintiff's hearing loss.  Id. at Ex. P-5.

Inmate Anthony Ciocchetti declares under penalty of perjury that he knows the plaintiff well after being incarcerated with him for nearly three years; he has spent a "great deal of time" with the plaintiff; the plaintiff never showed any evidence of hearing loss until the volume of the speakers was increased to where it was painful "even if we covered our ears"; there is "absolutely no question that [the plaintiff's] hearing problems began shortly after they jacked up the volume" on the speakers outside the library, the commissary, and both sidewalks on either side of the food service; and although it hurt Ciocchetti's ears "terribly," Ciocchetti did not spend as much time in the involved areas as the plaintiff.  Id. at Ex. P-6.

Inmate Reyes Martinez states under penalty of perjury that he entered FPC around the same time as the plaintiff; he has spent a lot of time with the plaintiff over almost four years; he has noticed that the plaintiff has trouble hearing him; the hearing deficit "traces to the time" when the speaker volume was increased "so high that if we were in the area of the outside speakers it would nearly knock us off our feet"; and he strongly believes that the increase in speaker volume is what caused the plaintiff to experience hearing difficulty.  Id. at Ex. P-7.

The plaintiff's daughter, Rachelle Graff, states under penalty of perjury that the plaintiff did not show any signs of hearing loss when she visited him in January 2010, but that he had difficulty hearing when she visited in October 2011.  Id. at Ex. P-9.  In a sworn statement dated August 20, 2011, the plaintiff's daughter, Kacelle Duran, states that she visited the plaintiff "not long ago" and he did not have any difficulty hearing.  Id. at Ex. P-10.  Another daughter,

Cametra Mathison, states that she has visited the plaintiff many times during the almost 15 years

he has been incarcerated, and he has never had any trouble hearing. *Plaintiff's Motion*, Ex. 8.

The defendant argues that the plaintiff cannot prove causation without the opinion of an

expert because his injury requires a skilled professional to determine the cause of his hearing

loss. *Defendant's Motion*, pp. 13-14.  The defendant cites Lynch v. L'Oreal USA S/D Inc., Civil

Action No. 11-cv-01343-RBJ-MJW, 2012 WL 4356231, at *3 (D.Colo. Sept 24, 2012), in

support.  In Lynch, the plaintiff alleged that the defendant's cosmetics caused her to suffer

chemical burns and facial cellulitis.  The court granted summary judgment for the defendant,

finding that although the plaintiff was competent to testify about her injuries and their effect on

her, she could not prove causation without expert testimony.  In doing so, the court stated:

> To prevail in this case, Ms. Lynch must prove that the Lancome
> Products caused her injuries.  To prove her case, Ms. Lynch offers
> evidence that she used the Lancome Products and subsequently
> suffered injuries on her face.  However, "[a] temporal relationship
> by itself, provides no evidence of causation."  In re Breast Implant
> Litig., 11 F.Supp.2d 1217, 1232 (D.Colo.1998).  Thus, showing
> only the timeline of applying the Lancome Products and
> subsequently suffering facial injuries is not sufficient to show
> causation.  Ms. Lynch must provide additional evidence to prove
> causation.
>
> "It is uniformly held that where injuries complained of are of such
> character as to require skilled and professional persons to
> determine the cause and extent thereof, they must be proved by the
> testimony of medical experts, but, that a lay witness is competent
> to testify concerning those physical injuries and conditions which
> are susceptible to observation by an ordinary person."  Franklin v.
> Shelton, 250 F.2d 92, 97 (10th Cir.1957).  For example, in
> Franklin, the plaintiff complained that after a car accident her eye
> was crossing and losing its power to focus and she was having
> certain female disorders.  Id. at 97–98.  The court held that the
> plaintiff was competent to testify that she was suffering from these
> disorders, but "her testimony was not competent to establish that
> these subjective conditions were the proximate cause of the

13

accident." <u>Id.</u> at 98. Similarly, in <u>Wilkins v. Kmart Corp.</u> the plaintiff sought to testify that he experienced drowsiness and dizziness as the result of taking Flexeril. 487 F. Supp.2d 1216, 1221 (D. Kan.2007). The court held, "[s]uch a causation opinion can only be rendered on the basis of specialized knowledge held by an expert qualified by medical education, experience and training." <u>Id.</u> However, the court explained, "the plaintiff certainly is qualified by personal knowledge to testify about what physical and emotional changes he experienced while taking Flexeril and about how these changes impacted him." <u>Id.</u>

These cases are analogous to Ms. Lynch's claims. Ms. Lynch is certainly qualified to discuss the injuries to her face and how they affected her physically and emotionally. However, Ms. Lynch is not qualified to testify about the cause of these injuries. Linking the injuries to Ms. Lynch's face with the use of the Lancome Products would require expert testimony. "The weight of evidence, is, of course, for the jury's determination and not for the court. But whether proffered evidence is competent, is a question of law for the court's determination." <u>Douglas Aircraft Co. v. Kerns</u>, 164 F.2d 1007, 1011 (10th Cir.1947). Because Ms. Lynch has not identified any expert witness, she has not come forward with competent evidence to show causation. Accordingly, summary judgment for L'Oreal is appropriate.

<u>Lynch</u> at **3-4.

Under Colorado law, causation must be established beyond mere possibility or speculation. <u>Kaiser Foundation Health Plan of Colorado v. Sharp</u>, 741 P.2d 714, 719 (Colo. 1987). Temporal connection may be considered as "one factor in assessing causation so long as it is not the sole factor relied upon." <u>Etherton v. Owners Insurance Company</u>, --- F.Supp.2d ----, Civil Action No. 10–cv–00892–PAB–KLM, 2014 WL 1302483 (D. Colo. March 31, 2014) (citing <u>Goebel v. Denver and Rio Grande Western R. Co.</u>, 346 F.3d 987, 999 (10th Cir. 2003).

Here, the plaintiff has presented only evidence of a temporal relationship between his exposure to the excessive volume of the PA system and his hearing loss. Like the plaintiff in the

14

Lynch case, the plaintiff has not designated nor sought to designate any expert witnesses.[5]  To the contrary, the plaintiff states that he does not need an expert witness.  *Plaintiff's Response*, p. 3, ¶ 9.  The question of whether the plaintiff's exposure to the sound from the PA speakers caused his hearing loss is beyond the knowledge and experience of the average lay person.  Without an expert to testify about the cause of his hearing loss, the plaintiff lacks competent evidence to prove causation.  See Allen v. Martin, 203 P.3d 546, 569 (Colo.App. 2008) (stating that "[a]lthough not resolved in Colorado, most jurisdictions have concluded that causation in a legal malpractice action must be proved by expert testimony, unless causation is within the jury's common understanding").

## IV.  CONCLUSION

I respectfully RECOMMEND:[6]

(1)   The Plaintiff's Motion [Doc. #60] be DENIED;

(2)   The Defendant's Motion [Doc. #64] be GRANTED; and

(3)   Summary judgment be entered in favor of the defendant.

---

[5]The deadline for disclosure of expert witnesses was April 11, 2014 [Doc #40].

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 4, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge